IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARJORIE J. LEBO, | ) | CASE NO: 5:11CV1857 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID D. DOWD |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| IMPAC FUNDING CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |

In this removed action, Plaintiff Marjorie J. Lebo ("Lebo") alleges the following claims: breach of contract against Defendant Impac Funding Corporation ("Impac"); fraud against Impac; and accounting against Defendants HomeEq Servicing Corp. ("HomeEq") and Deutsche Bank National Trust Company, as Trustee under Pooling and Servicing Agreement dated as of June 6, 2002 PFCA Home Equity Investment Trust 2003-IFC3 ("Deutsche Bank").  Doc. 1, Exhibit A.  Impac and Deutsche Bank have filed motions to dismiss.  Docs. 5 and 6.  This matter has been referred to the undersigned Magistrate Judge for general pretrial supervision, including the preparation of a report and recommendation on dispositive motions.  *See* Docket Entry dated 9/20/2011.

For the following reasons, the undersigned recommends that the Court DENY Impac's Motion to Dismiss (Doc. 6) and GRANT Deutsche Bank's Motion to Dismiss (Doc. 5).

**I. Background**

Lebo, an eighty-two year old widow, owns, and resides in a house in Stark County, Ohio (the "Residence").  Doc. 1, Exhibit A, Complaint, ¶ 1.  Lebo has owned the Residence since 1992.  *Id.* at ¶ 8.  On or about March 12, 2003, Lebo granted a mortgage on the Residence to non-party Express Capital Lending ("Express") to secure a note in the amount of $73,000 (the

1

"Mortgage" and the "Note" respectively). *Id.* at ¶ 9. On the same day Lebo executed the Note and Mortgage, Express assigned the Note and Mortgage to Impac. *Id.* at ¶ 10. Shortly thereafter, on or about April 28, 2003, Impac assigned the Note and Mortgage to Deutsche Bank.[1] Lebo was unaware of this assignment. *Id.* at ¶ 12. The assignment of the Note and Mortgage from Impac to Deutsche Bank was recorded in the Stark County Recorder's Office on October 5, 2005. *Id.* at ¶ 13. Lebo states that, from late 2005 until sometime in mid-to-late 2010, the Note and Mortgage were serviced by HomeEq. *Id.* at ¶ 14.

In 2004, Lebo suffered injuries in an accident that precluded her from working for an extended period of time. *Id.* at ¶ 15. On or about August 29, 2006, Lebo filed for bankruptcy protection in the United States Bankruptcy Court for the Northern District of Ohio, in a Chapter 13 proceeding that was dismissed after the court did not accept Lebo's Chapter 13 plan. *Id.* at ¶ 17. During and after the bankruptcy proceedings Lebo made her monthly Note and Mortgage payments to HomeEq. *Id.* at ¶ 18.

On February 15, 2010, Impac wrote to Lebo advising her that it was the holder of the Note and Mortgage and that it might be able to make Lebo's monthly mortgage payments more affordable. *Id.* at ¶ 19; Doc. 1, Exhibit A, Complaint – Ex. D, Letter from Impac dated 2/15/2010. Impac represented that some options for qualified customers were to move any delinquent payments and fees to the end of the loan term to bring the customer current or to provide the customer with a two to five year payment relief program. *Id.* Impac requested that Lebo contact Impac via telephone to discuss a loan modification. *Id.*

On May 28, 2010, Impac sent a second letter to Lebo indicating that she may qualify for a rate reduction program that would, in part, make her monthly mortgage payments more affordable, move any delinquent payments and fees to the end of her loan term and/or provide

---

[1] Impac states that it is the current Master Servicer of the Note and Mortgage. Doc. 6, p. 1.

her with a payment relief program.  Doc. 1, Exhibit A, Complaint – Ex. E, Letter from Impac dated 5/28/2010.  Again, Impac requested that Lebo contact it by telephone.  *Id.*

In response to the written solicitations by Impac, Lebo contacted Impac via telephone and spoke to a representative of Impac.  *Id.* at ¶ 21.  On June 9, 2010, Impac sent Lebo a third letter, in which it thanked Lebo for speaking with its representative and outlined the steps Lebo needed to take to qualify for a loan modification.  Doc. 1, Exhibit A, Complaint – Ex. F, Letter from Impac dated 6/9/2010.  The letter also stated that, once Lebo had received an "upfront approval" she would be issued an "approval letter" containing the modified terms in detail.  *Id.*  The letter further stated that the loan modification required a fee of $695 for processing and documentation charges, which must be paid in full before the modification process can begin.  *Id.*

On June 24, 2010, Impac sent Lebo an "Official Approval Letter" indicating that Lebo had qualified for a loan modification with a term of five years and an interest rate of three percent.  *Id.* at ¶ 24; Doc. 1, Exhibit A, Complaint – Ex. G, Letter from Impac dated 6/24/2010.  The letter stated:

> Congratulations, you have been approved for a mortgage loan modification.  We have confirmed that your unique situation qualifies you for modification relief.
>
> **This is a guaranteed, Upfront Modification Approval with the Exact Terms provided below:**
>
> **Guaranteed Modification Terms:**
>
> - New modified term of 5 years at an interest rate of 3.00%
>
> - Impac is agreeing to capitalize any past due principal, and/or interest payments, fees, and costs by adding those amounts to the unpaid principal balance (UPB)
>
> - New UPB will be calculated with final Loan Modification documents
>
> - Once your modification period is complete, your loan will revert back to the original terms.

*Id.* (emphasis in original).  The letter then instructed Lebo to submit the processing fee of $695 and stated that the fee must be paid in full before the modification process would take effect.  *Id.*  The letter also provided that, once Impac received payment, it would package the mortgage loan modification documents and send them to Lebo within four to six weeks, and that the documents needed to be signed by Lebo and returned within the time required "(usually 10 business days)."  *Id.*  Finally, the letter stated that once the completed documents were received, the new loan mortgage modification would start on September 1, 2010.  *Id.*

On July 7, 2010, Lebo forwarded a cashier's check in the amount of $695 to Impac in satisfaction of the processing fee.  *Id.* at ¶ 25; Doc. 1, Exhibit A, Complaint – Ex. H, Copy of Cashiers' Check.  The check was accepted and negotiated by Impac.  *Id.*

Lebo never received the loan modification documents after she paid the $695 processing fee.  *Id.* at ¶ 26.  Further, in response to Lebo's repeated inquiries, Impac's representatives continued to advise her that the loan modification papers were being processed and that she should not make her monthly mortgage payments to HomeEq until she received the modification.  *Id.* at ¶ 27.  Lebo alleges that, in reliance on these statements, she stopped making her payments on the Note and Mortgage.  *Id.* at ¶ 28.  Lebo never received the loan modification.  *Id.* at ¶ 29.  Lebo also alleges that she has been advised by Deutsche Bank, through its current loan servicing company, that her loan balance is now in excess of $102,000.

On August 1, 2011, Lebo filed a complaint in the Court of Common Pleas for Stark County, Ohio, against Impac, HomeEq, and Deutsche Bank.  Doc. 1, Exhibit A.  On September 1, 2011, Defendants Impac and Deutsche Bank removed the case to this Court.[2]  Doc. 1.

---

[2] It appears from the docket that HomEq has not been served in this case.

On September 6, 2011, Deutsche Bank filed its motion to dismiss. Doc. 5. On September 8, 2011, Impac filed its motion to dismiss. Doc. 6. On October 6, 2011, Lebo filed responses in opposition to Defendants' motions to dismiss. Docs. 9 and 10. On November 22, 2011, Defendants filed reply briefs in support of their motions to dismiss. Docs. 17 and 18.

## II. Law & Analysis

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (clarifying the plausibility standard articulated in *Twombly* ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations of a pleading must be enough to raise a right to relief above the speculative level. *Id.* at 555. The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Id.* "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65.

In ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may

5

take judicial notice. *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F.Supp.2d 914, 924–25 (N.D. Ohio 2009).

A.    **Impac's Motion to Dismiss**

    1.    **Count I - Breach of Contract**

In her first count, Lebo alleges that Impac breached its contract to provide her with a loan modification. Doc. 1, Exhibit A, Complaint, ¶ 31. Impac argues that Lebo has failed to state a breach of contract claim against Impac and that Lebo's claim is barred by Ohio's statute of frauds. Doc. 6, p. 3-4.

A breach of contract claim in Ohio has four elements: (1) the existence of a contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) the existence of damages. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (interpreting Ohio law).

In this case, the main dispute is whether the parties entered into a contract. Lebo has alleged sufficient facts to create a plausible claim that the parties entered into a contract. Lebo alleges that Impac offered to enter into a loan modification agreement. Doc. 1, Exhibit A, Complaint, ¶¶ 19-25. She argues that Impac's correspondence through letters and telephone calls was a valid offer. Doc. 10, p. 5. Lebo argues that the offer is particularly evidenced in the June 24, 2010 correspondence from Impac, which states "**[t]his is a guaranteed, Upfront Modification Approval with the Exact Terms provided below.**" Doc. 1, Exhibit A, Complaint – Ex. G, Letter from Impac dated 6/24/2010 (emphasis in original). Lebo further alleges she accepted the offer by following instructions set forth by Impac (i.e. she contacted Impac and paid Impac a specified sum of money to process the loan modification). Doc. 1, Exhibit A, Complaint, ¶¶ 19-25. All of the letters attached to the complaint, as well as Lebo's

6

allegations, are sufficient at the pleading stage to satisfy the first element of a breach of contract claim that a contract existed between Impac and Lebo.

Under the second element, Lebo alleges performance under the contract by paying the $695 processing fee. Doc. 1, Exhibit A, Complaint, ¶¶ 23-27. Under the third element, Lebo alleges Impac breached the contract when it did not provide her with the agreed upon loan modification. *Id.* Finally, as a result of Impac's breach, Lebo alleges she incurred damages. *Id.* at ¶¶ 29, 32. Moreover, Impac has not argued that Lebo failed to sufficiently pled performance, breach, or damages. Lebo's allegations are more than just threadbare recitals of the elements of a breach of contract claim. As set forth in *Twombly*, all that pleaders need do is to allege enough facts to "nudge[] their claims across the line from conceivable to plausible . . . ." Id. at 570. Lebo has done so in this case.

Impac also argues that the statute of frauds bars Lebo's contract claim because there is no writing signed by Impac.[3] However, under Ohio law, "[t]he statute of frauds in an affirmative defense to a claim." *Mossa v. W. Credit Union, Inc.*, 84 Ohio App.3d 177, 180, 616 N.E.2d 571 (Ohio App. 10th Dist. 1992) (citing Rule 8(c) of the Ohio Rules of Civil Procedure). In general, a complaint is not required to anticipate and negate affirmative defenses that the defendant might raise. *See, e.g., DSW, Inc. v. Zina Eva, Inc.*, 2011 WL 1336569 (S.D. Ohio April 6, 2011); *U.S. Gypsum Co. v. Ind. Gas Co.,* 350 F.3d 623, 626 (7th Cir. 2003) (complaints need not anticipate or attempt to defuse potential defenses). From the face of the complaint, it is unclear if the statute of frauds is applicable to the loan modification at issue in this case. Lebo has identified a

---

[3] Ohio's statute of frauds provides, in pertinent part:

No action shall be brought whereby to charge the defendant . . . upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them . . . unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

Ohio Rev. Code § 1335.05.

7

plausible scenario under which a breach of contract claim could be established and, as a result, dismissal would be inappropriate at this stage of the litigation.[4]

Moreover, even if the statute of frauds applied to the loan modification at issue in this case, the doctrine of partial performance may remove the contract from the statute of frauds. *See, e.g., Myers v. Croswell*, 45 Ohio St. 543, 547, 15 N.E. 866, 868-869 (1888). A party who has accepted partial performance by another party under a contract will typically be barred from asserting the statute of frauds in order to avoid meeting its own contractual obligations. *Crilow v. Wright*, 2011 WL 198424, at *5 (Ohio App. 5th Dist. January 14, 2011). Part performance of an oral contract for the sale of real estate can be sufficient to remove the contract from the operation of the statute. *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 287, 209 N.E.2d 194 (1965). Here, Lebo has alleged partial performance, i.e., that she mailed the $695 processing fee. As such, the doctrine of partial performance could remove the contract from the statute of frauds. Therefore, even if the statute of frauds applied, dismissal would not be warranted at this stage of the litigation.

In sum, Lebo has stated a claim upon which relief can be granted as to her breach of contract claim. Accordingly, the Court should DENY Impac's motion to dismiss with regard to Lebo's breach of contract claim.

### 2. Count Two – Fraud

In contrast to the liberal pleading standard in Rule 8, Rule 9 of the Federal Rules of Civil Procedure requires a plaintiff to plead "with particularity the circumstances constituting fraud or

---

[4] The Ohio Supreme Court has found that several writings, though made at different times, may be construed together for the purpose of ascertaining the terms of a contract required by the statute of frauds to be in writing and signed by the party to be charged therewith. *Thayer v. Luce* (1871), 22 Ohio St. 62, syllabus. The writings satisfy the statute of frauds, even though only one such writing is signed, if the signed writing refers to the unsigned writing or if it appears by inspection and comparison of the writings that they logically relate to, or form part of, the same transaction. *Id.*; *see also Soteriades v. Wendy's of Ft. Wayne, Inc.*, 34 Ohio App.3d 222, 225, 517 N.E.2d 1011, 1015 (Ohio App. 10th Dist. 1986). Lebo has attached to her Complaint several letters from Impac that may satisfy the statute of frauds.

mistake." Fed.R.Civ.P. 9(b). To satisfy the particularity requirement of Rule 9(b), a plaintiff who brings a fraud claim must generally "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Marlar v. BWXT Y–12 L.L.C.,* 525 F.3d 439, 444 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 342 F.3d 634, 643 (6th Cir. 2003)). The complaint must "alert the defendants 'to the precise misconduct with which they are charged'" to protect them "'against spurious charges of immoral and fraudulent behavior.'" *Sanderson v. HCA–The Healthcare Co.,* 447 F.3d 873, 877 (6th Cir. 2006) (quoting *United States ex rel. Clausen v. Lab. Corp. of America, Inc.,* 290 F.3d 1301, 1310 (11th Cir. 2002)).

In her fraud claim, Lebo alleges that Impac falsely represented that it was the holder of the Note and Mortgage with the intent to induce her to pay the processing fee of $695. Doc. 1, Exhibit A, Complaint, ¶ 34. Lebo alleges that she justifiably relied upon Impac's false and/or willfully reckless representations and paid Impac the $695 processing fee and suspended her monthly payments on the Note and Mortgage. *Id.* at ¶¶ 35-36.

Impac argues that Lebo's fraud claim is barred because it is duplicative of her breach of contract claim. Doc. 6, p. 4. This argument is premature in this case. In Ohio, a breach of contract does not create a tort claim. *Wolfe v. Continental Cas. Co.,* 647 F.2d 705, 710 (6th Cir. 1981). Generally, "the existence of a contract action . . . excludes the opportunity to present the same case as a tort claim." *Id.* Where a plaintiff asserts a tort claim based on the same conduct that constitutes a breach of contract, the plaintiff must show fraud damages separate from those attributable to the breach of contract. *Medical Billing, Inc. v. Medical Mgmt. Sciences, Inc.,* 212 F.3d 332, 338 (6th Cir. 2000) (holding that an award of damages "arising from the fraudulent

9

inducement must be separate and distinct from the damages awarded [for breach of contract]."); *see also Kott v. Gleneagles Prof'l Builders & Remodelers, Inc*., 2012 Ohio 287, (Ohio App. 6th Dist. 2012).

In *Medical Billing*, for example, the plaintiff sought to terminate a contract after accusing the defendant of failing to use the correct formula for calculating compensation. 212 F.3d at 334. To avoid termination, the defendant promised the plaintiff that it would use the correct formula and the plaintiff withdrew its notice of termination. *Id.* When the defendant continued to use an incorrect formula to calculate compensation, the plaintiff sued for fraud and breach of contract. *Id.* After a jury trial, the district court awarded damages on both plaintiff's fraudulent inducement claim and its breach of contract claim. 212 F.3d at 338. The Sixth Circuit reversed the district court, holding that an award of damages for both claims would be redundant and noting that the damages sought (loss in compensation) flowed from the breach of contract. *Id*. at 339.

Unlike *Medical Billing,* this matter has not proceeded beyond the pleading stage. Lebo is entitled to plead claims for relief in the alternative. Fed. R.Civ.P. 8(a)(3); *see also Hodell-Natco Industries, Inc. v. SAP America, Inc*., No. 1:08 CV 02755, 2011 WL 2174365 (N.D. Ohio June 2, 2011). It is also unclear at this stage of the litigation if recovery under both causes of action would produce duplicative damages. Dismissal of the fraud claim is therefore premature. Of course, should Lebo ultimately prevail on her fraud claim, her recoverable damages would be limited to those separate and distinct from any damages awarded on her breach of contract claim. *See Medical Billing,* 212 F.3d at 338.

Impac also argues that Lebo failed to meet the heightened pleading standard under Rule 9(b). In order to state a claim for fraud in Ohio, a plaintiff must allege: (1) a representation or,

where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Found. for Moral Law, Inc. v. Infocision Mgmt. Corp.,* 2008 WL 5725627, *5 (N.D. Ohio May 27, 2008) (citing *Groob v. KeyBank,* 108 Ohio St.3d 348, 357, 843 N.E.2d 1170 (2006)).

  Under the first and second elements, Lebo alleges that Impac was not the holder of the Note and Mortgage, as it stated in its February 15, 2010 letter to Lebo. Doc. 1, Exhibit A, Complaint – Ex. D, Letter from Impac dated 2/15/2010. Lebo states that Impac had assigned the Note and Mortgage in 2003, but that the assignment was not recorded until October 5, 2005. Doc. 1, Exhibit A, Complaint, ¶¶ 12-13 and Exhibit C, Assignment by Impac to Deutsche Bank. Based on this assignment, Lebo argues that Impac had no actual authority to modify the terms of the loan. Doc. 10, p. 6. Lebo alleges that Impac misrepresented that it was the holder of the note and that it could enter into a loan modification with Lebo and Lebo, relying upon this misrepresentation, paid the $695 processing fee. Doc. 1, Exhibit A, Complaint, ¶¶ 25-29. These allegations also satisfy the third and fourth elements of a fraud claim because, at a minimum, Impac was reckless in representing that it was the holder of the Note and Mortgage when in fact it had assigned the Note and Mortgage to Deutsche Bank, and it allegedly made this representation with the intent that Lebo would rely on it and make the $695 payment. *Id*. Under the fifth and sixth elements, Lebo alleges that she justifiably relied upon Impac's promise to provide her with a loan modification and paid the $695 processing fee and stopped making her monthly mortgage payments. *Id.* at ¶¶ 25-29, 35-37. As a result of this reliance, Lebo lost the

11

$695 and incurred additional fees, interest payments, and penalties because she stopped making payments on her Note and Mortgage. *Id.*

Based on the foregoing, Lebo has stated a factually plausible claim for fraud – that Impac knew it did not have the authority to provide Lebo with a loan modification but promised the modification with the intent of defrauding her out of the $695 processing fee. Her allegations place Impac on sufficient notice of the misrepresentation so that it can adequately respond to her allegations. Thus, Lebo has stated with particularity the circumstances constituting fraud and has complied with the requirements of Rule 9(b).

Finally, Impac argues that Lebo's fraud claim must fail because a party's representations about its future conduct cannot be the basis of a fraud claim. Doc. 6, p. 5. In general, a party's representations about its future conduct cannot be the basis of a fraud claim. *See Tibbs v. National Homes Constr. Corp.*, 52 Ohio App.2d 281, 369 N.E.2d 1218, 1222 (Ohio App. 12th Dist. 1977) ("It is generally true that fraud cannot be predicted upon promises or representations relating to future actions or conduct."). An exception to this rule is if "an individual makes a promise concerning a future action, occurrence, or conduct, and, at the time he makes it, has no intention of keeping the promise." *Williams v. Edwards*, 129 Ohio App.3d 116, 124, 717 N.E.2d 368 (Ohio App. 1st Dist. 1998). This exception recognizes that the fraudulent conduct stems from the individual's present intent not to perform the promise and not the nonperformance of the promise in the future. *Id.*

Here, there are two misrepresentations alleged in the complaint: (1) that Impac falsely represented that it owned the Note & Mortgage, which is a misrepresentation as to a present fact; and (2) that Impac falsely represented that it intended to modify the mortgage, which is a misrepresentation relating to future conduct. Impac's argument based on future performance

fails for two reasons. First, Impac did make a misrepresentation about an existing fact - who owned the mortgage. Second, at this stage of the litigation, it appears that Lebo may fall within the exception to the general rule that fraud cannot be predicated on promises or representation relating to future conduct because, based on the allegations of the complaint, it is unclear whether Impac ever intended to provide Lebo with a loan modification. Indeed, Lebo argues that Impac was not the holder of the Note and Mortgage and, as such, actually did not have authority to modify her loan at the time it stated that it intended to do so. Doc. 10, p. 6. Thus, the exception to the future performance rule may apply because the fraud stemmed from Impac's intent never to provide Lebo with a loan modification, not Impac's ultimate failure to provide the loan modification.

Accordingly, Lebo has sufficiently stated a claim for fraud and Impac's motion to dismiss with regard to the fraud claim should also be denied.

**B.     Deutsche Bank's Motion to Dismiss**

In count three of her complaint, Lebo asserts a claim for equitable accounting against Deutsche Bank. Doc. 1, Exhibit A, Complaint, ¶¶ 39-41. In support of this claim, Lebo alleges that Deutsche Bank failed to provide her with credit for payments she made on the Note and Mortgage during and after her bankruptcy proceeding. Doc. 1, Exhibit A, Complaint, ¶ 40. Lebo seeks an accounting from Deutsche Bank of all payments she made on the Note and Mortgage, as well as all penalties, fees, late charges, and other charges assessed against her in connection with the Note and Mortgage. *Id.* at ¶ 41. Deutsche Bank argues that Lebo's claim for accounting should be dismissed for failure to state a claim upon which relief can be granted.

In general, an accounting is defined as "a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another."

13

*Bradshaw v. Thompson,* 454 F.2d 75, 79 (6th Cir. 1972).  It is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate.  *Id.*  Under Ohio law, "where there is an adequate remedy at law, an equitable remedy is improper."  *McNulty v. PLS Acquisition Corp.,* Nos. 79025, 79125, 79195, 2002 WL 31875200, ¶ 80 (Ohio App. 8 Dist. Dec.26, 2002).  As explained in *Executone of Columbus, Inc. v. Inter–Tel, Inc.*, No. 2:06–CV–00126, 2007 WL 1144866, at *4 (S.D. Ohio April 16, 2007):

> It will be the rare case where an equitable accounting lies, since legal remedies are more adequate; discovery is liberal under the Federal Rules of Civil Procedure; and the requirement of inadequacy of remedy at law remains the same . . . .  Defendants' case is not one of those "rare cases" since their damages are readily ascertainable through discovery.

*See also Bradshaw,* 454 F.2d at 79 ("[An accounting] is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate .... the liberal discovery procedures of the Federal Rules operate to make the legal remedies more 'adequate' than before."); *Boland v. First Winthrop Corp.,* 2010 U.S. Dist. LEXIS 77609, *7–8, 2010 WL 3037076 (S.D. Ohio Aug. 2, 2010) ("Equitable accounting actions are rare since the advent of the Federal Rules of Civil Procedure because the liberal standards of the Rules generally afford plaintiffs the opportunity to obtain discovery relevant to their asserted claim."); *Digital 2000, Inc. v. Bear Commc'ns., Inc.,* 130 Fed. App'x 12, 23 (6th Cir. 2005) ("In light of the broad discovery available to litigants, accounting actions are of dubious utility.") (relying on Michigan state law).

An accounting claim "'must set forth operative facts [that], when construed in the plaintiff's favor, establish a right to the requested relief.'"  *Davis v. DCB Fin. Corp.*, 259 F.Supp.2d 664, 674 (S.D. Ohio 2003) (quoting *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 814, 742 N.E.2d 674 (Ohio App. 10th Dist. 2000)).  A bare allegation that the

plaintiff is entitled to an accounting without any legal basis is insufficient to state a claim. *Id*. In *Executone*, the court explained what legal bases and facts need to be set forth under Ohio law to state a claim for accounting:

> Such legal bases and operative facts could have been pled in the form of fraud, fiduciary or trust relationship, and necessity. Or, Defendants could have pled that mutual accounts or circumstances of great complication existed between the parties. Alternatively, the Defendants could have argued that the Plaintiffs had possession of profits to which another person is entitled to share, regardless of what [their] relationship may have been at the time the profits were earned.

2007 WL 1144866, at *4 (internal citations and quotations omitted); s*ee also Miller Medical Sales v. Worstell,* No. 91AP–610, 1992 Ohio App. LEXIS 779, *18, 1992 WL 31988 (Ohio App. 10th Dist. Feb. 18, 1992) ("Ordinarily, the elements required for such relief are fraud, fiduciary or trust relationship, and necessity."); *Rare Coin Enterprises Ltd. v. Chrans,* No. 3:05 CV 7473, 2006 WL 2373281, at *1 (N.D. Ohio Aug.16, 2006) ("[A]n accounting is not a remedy for breach of contract action, but rather rises out of an action for breach of fiduciary duty or other trust relationship between the parties.")

In this case, all of Lebo's arguments in support of her accounting claim fail.  First, Lebo has not shown that the remedy available to her at law is inadequate.  Lebo essentially argues for her need to take discovery rather than establishing that her remedy at law is inadequate.  Because her damages are ascertainable through discovery, this is not one of those rare cases in which an equitable accounting would be appropriate.  Additionally, Lebo has failed to adequately plead the elements of an accounting claim.  Lebo seeks only information from Deutsche Bank regarding payments she made on the Note and Mortgage.  She does not allege that Deutsche Bank committed fraud or otherwise caused her any monetary damages.  Further, Lebo has not pled a fiduciary relationship or other trust relationship between herself and Deutsche Bank, or that there are complicated circumstances in this case that would warrant an accounting.  Put

15

simply, the information Lebo seeks is available to her through discovery.  Accordingly, the undersigned recommends that the Court GRANT Deutsche Bank's motion to dismiss (Doc. 5) and dismiss count three of the complaint against Deutsche Bank.

### III.  Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Court DENY Impac's motion to dismiss.  Doc. 6.  The undersigned further recommends that the Court GRANT Defendant Deutsche Bank's motion to dismiss.  Doc. 5.

Dated: February 8, 2012

Kathleen B. Burke
United States Magistrate Judge

### **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).